## INSURANCE COMPANY *v.* EXPRESS COMPANY.

A policy, issued to an express company, insuring goods and merchandise in its care for transportation while on board cars or other conveyances, contained the following provision: " It is a further condition of this insurance, that no loss is to be paid in case of collision, except fire ensue, and then only for the loss and damage by fire. And that no loss is to be paid arising from petroleum or other explosive oils." Certain goods in the possession of the company, and in the course of transportation by it, were in an express freight-car, forming part of a railway train, which collided with another train composed mainly of oil-cars loaded with petroleum. Immediately upon the collision, the petroleum burst into flames, which enveloped and destroyed the freight-car and the goods. *Held,* that the loss thereby sustained by the express company was not covered by the policy.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. N. B. Hoxie* for the plaintiff in error.
*Mr. S. P. Nash, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This was an action upon two policies of insurance against fire, issued by the defendants to the plaintiffs below, an express company, and covering goods, wares, and merchandise in their care for transportation while on board cars or other conveyances, including water and stage routes, embracing the entire routes of the company designated on a map specified. The policies, though differing in the sums insured, were alike in all

other particulars. To the action two defences were set up, both founded upon certain provisions of the policies. The material parts out of which the first of these defences is thought to arise are the following: —

"It is a further condition of this insurance, that no loss is to be paid in case of collision, except fire ensue, and then only for the loss and damage by fire. And that no loss is to be paid arising from petroleum or other explosive oils."

"Petroleum, rock, earth, coal, kerosene, or carbon oils of any description, whether crude or refined; benzine, benzole, naphtha, camphene, spirit gas, burning fluid, turpentine, phosgene, or any other inflammable liquid, are not to be stored, used, kept, or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission indorsed on this policy, excepting the use of refined coal, kerosene, or other carbon oil for lights, if the same is drawn and the lamps filled by daylight, otherwise this policy shall be null and void."

"If any property covered by this insurance be damaged by lightning, or the bursting of a boiler, or by explosion from any cause, this company shall not be liable therefor, unless fire ensues, and then for the loss by fire only, which shall be determined by the value of the damaged property after the casualty by explosion or lightning."

It is claimed that by force of these provisions the loss which occurred was excepted from the risk undertaken by the insurers, or, in other words, that the loss was not covered by the policies. This is one of the defences set up against any recovery by the plaintiffs.

The other defence is, that the suit was not brought within the term of twelve months next after the loss or damage occurred, and was, therefore, barred by an express stipulation contained in the policies. Both these defences were overruled in the Circuit Court, and the jury was instructed to return a verdict for the plaintiffs. It is obvious that, if either of the defences was maintainable, — if the loss was not covered by the policies, or if the suit was barred by any stipulation contained in them, — the instruction given to the jury was erroneous. And, as we think the loss was excepted from the risk assumed by the insurance company, it will be unnecessary to consider whether the action was brought too late.

There is no controversy about the facts. They were agreed upon and admitted at the trial. During the years 1870 and 1871, the New York Central and Hudson River Railroad was one of the routes of the plaintiff denoted on the map referred to in the policies of insurance.

On Feb. 6, 1871, an oil freight-train of said railroad was on its way from the city of Albany to the city of New York, on the westerly track of the railroad. The train was composed mainly of oil-cars, so called, the same being trucks or platforms, having upon them, respectively, two large wooden tanks, with iron hoops; one of the tanks at each end of the trucks or platforms, and each tank containing several thousand gallons of petroleum.

By the breaking of an axle, one of the oil-cars was thrown from or left the westerly track, and so left and situated that it stood across the easterly track of the railroad, upon the bridge next south of the tunnel at New Hamburgh.

While the oil-car was so situated, an express passenger-train of the railroad company, composed of locomotive and tender, baggage-car, express freight-car, five sleeping-cars, and one ordinary passenger-car, connected in the order stated, was on its way from the city of New York to the city of Albany, upon the easterly track of the railroad. In the express freight-car was a large quantity of merchandise in the possession of the plaintiffs, and in the course of transportation by them.

The express passenger-train was proceeding at a high rate of speed, and while so proceeding, at or about the hour of ten o'clock in the evening of the said sixth day of February, 1871, struck one of the oil-tanks upon the oil-car standing across the easterly track of the railroad upon the bridge, as before mentioned.

Immediately upon the collision, the petroleum in said tank so struck was in some way ignited and burst into flames, which surrounded and enveloped the locomotive and tender, baggage-car, express freight-car, and first, second, and third sleeping-cars of the express passenger-train, and consumed the bridge, the baggage-car and its contents, the express freight-car and most of its contents, and the first, second, and third sleeping-cars, with many of the passengers therein.

There was no petroleum or other explosive oil in or upon either of said trains in the possession or under the control of the plaintiffs.

In view of the facts thus stated, it is an inevitable inference that the destruction of the express-car and its contents arose from the burning petroleum, or was caused by it; and it makes no difference to this case how the petroleum was ignited, whether by burning coals from the locomotive, or by heat generated in the collision.

The policies insured only against fire, and the excepting clause we have quoted was plainly intended to exclude from the risk taken certain possible fires. It stated, as a condition of the insurance, that no loss should be paid in case of collision, except fire ensued, and then only for the loss and damage by fire, and that no loss should be paid arising from petroleum or other explosive oils. This plainly implies that, in contemplation of the parties, a loss by fire might arise or be caused by petroleum. That would be impossible, unless the petroleum were ignited in some way. It must, therefore, have been understood that burning petroleum, distinguished from the match, coals, or collision that ignited it, might originate a fire, and that a loss might arise from it. Such a loss, therefore, must have been the one intended to be excepted, as truly as the excepting a loss from gunpowder would mean from ignited gunpowder, not merely from the loss caused by the match which ignited it. Keeping in mind the general intent of the contract, which was insurance against fire, we may, perhaps, arrive at the understanding of the parties by following the succession of provisions the policy contains. After having acknowledged the receipt of the premium for insurance of the property against fire generally, the thought seems to have occurred that railroad collisions might take place, causing damage and resulting in fire. The policy, therefore, stipulated that in such cases only the damage caused by fire, as distinguished from that caused by the collision, should be covered by the policies. Then it seems to have been considered that collisions might result in setting fire to petroleum, a known dangerous substance, which, when ignited, produces uncontrollable fires; and, therefore, it was stipulated that no loss arising from petroleum

should be paid for, even though its ignition should ensue as a consequence of collision. Looking at the position in the contract of these excepting provisions, being in juxtaposition, as they are, and in one policy parts of the same sentence, it is evident that such must have been the process of thought of the parties. The meaning of the language used by the insurers, then, is this: We will insure you against fire; and, if fire ensues from a collision, we will pay the damages caused by the fire, though not that caused by the collision; but if a fire ensuing a collision arise from petroleum or other explosive oils, we do not undertake to pay the loss. All other losses caused by fire resulting from collision we will pay. Such, we think, is the most natural construction of the excepting clause.

The circuit judge was of opinion that what the parties contemplated was exemption from liability for loss occasioned by explosion. This he inferred from the expression, "no loss is to be paid arising from petroleum *or other explosive oils*" (severing it from the sentence of which it is really a part). Hence, he concluded that the parties treated petroleum as an explosive substance; and that when, as generally, in case of fire, if an explosion occur which is caused by the fire, the insurers might be liable for the whole damage caused by the explosion, in this case they were exempted by the exception from all loss except that immediately communicated by fire. To us this appears to be a strained and unnatural construction, and it is decisive against it that the parties have clearly and expressly stipulated for the case of loss by explosion in another part of the policy. It is a fair and necessary inference from this that the parties had in mind, when they inserted the clause, other causes of loss and other limitations of liability.

The defendants in error have argued that the exempting clause may fairly be construed so as to read, "No loss is to be paid arising from petroleum or other explosive oils carried by the parties insured;" or "carried upon the same train of cars or other conveyance used by the parties insured." But such a construction would be making a contract, instead of interpreting one already made. Another section of the policies contains a condition that petroleum, rock, earth, coal, kerosene, or carbon oils of any description, whether crude or refined, benzine,

benzole, naphtha, camphene, spirit gas, burning fluid, turpentine, phosgene, or any other inflammable liquid, shall not be stored, used, kept, or allowed on the premises insured (that is, in the cars or conveyances employed), either permanently or temporarily, for sale or otherwise. The petroleum referred to in the excepting clause must, therefore, have been some other than such as might be carried by the assured, or on the conveyances used by them. Collisions of express trains with petroleum-oil trains, and the consequent frightful destruction of property and life by fire, had occurred before these policies were issued, and manifestly the contracting parties intended to take out of the risk assured the damages which might result from such a possible catastrophe.

We are, therefore, led to the conclusion that the loss sustained by the plaintiff was not covered by the policies, and that the Circuit Court erred in charging the jury to return a verdict against the defendants.

*Judgment reversed.*