[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 780 
The plaintiff, The Hardin Bag Burlap Company, Inc., brought suit against the defendant, Fidelity Guaranty Fire Corporation, seeking to recover $665.85 on three insurance policies covering loss and damage caused by sprinkler leakage. The defendant denied liability on the ground that the damage suffered was not within the *Page 781 
coverage of the policies. On trial, the lower court gave judgment in favor of the plaintiff. On appeal to the Court of Appeal for the Parish of Orleans, the judgment was affirmed. 1 So.2d 830. On rehearing, the judgment was reinstated. 5 So.2d 390. The matter comes to us by way of review.
The plaintiff was a tenant in the Maginnis Terminal in the City of New Orleans, occupying the lower floor. On February 26, 1939, a part of the roof of the building, occupied by the plaintiff, was blown off by a windstorm; which ruptured the sprinkler system feed pipe; caused a large volume of water to escape to the lower floor of the building; and damaged the plaintiff's goods in the amount of $665.85.
The three insurance policies are similar. Each calls for a coverage of $2,500 at a premium of $16.62 for the term of three years. Each of the policies contains the following provisions:
"* * * against all direct loss and damage by `sprinkler leakage,' except as herein provided, * * *" (Italics ours)
"Sprinkler leakage. Wherever in this policy the term `Sprinkler Leakage' occurs, it shall be held to mean leakage or discharge of water or other substance from within the `Automatic Sprinkler System' resulting in loss or damage to property described herein."
"Hazards not covered. This Company shall not be liable for loss or damage caused directly or indirectly by seepage or leakage of water thru building walls, foundations, sidewalks, or sidewalk lights (unless caused *Page 782 
by `Sprinkler Leakage'), or by condensation or deposits on the `Automatic Sprinkler System,' or by floods, inundation, or backing up of sewers or drains, or by the influx of tide water or water from any source other than the `Automatic Sprinkler System,' or by fire, lightning, cyclone, tornado, windstorm, earthquake, explosion, including explosion and/or ruptures of steam boilers and fly-wheels, blasting, invasion, insurrection, riot, civil war or commotion, or by military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after a `Sprinkler Leakage'; nor, unless otherwise provided by agreement in writing added hereto, for loss or damage caused directly or indirectly by aircraft and/or aircraft equipment (whether on or off the ground — and not contained in the building(s) described herein) and/or objects falling or descending therefrom."
At the time that the defendant made application for review, January 31, 1942, there was pending in this Court another suit, American Manufacturing Corporation, Inc., v. National Union Fire Insurance Company of Pittsburg, Pennsylvania, involving identical issues. We withheld action on the application for review pending the determination of the American Manufacturing Corporation, Inc., case, which was handed down on June 29, 1942. 203 La. 515,14 So.2d 430. On that date, we granted review in this case. We have withheld the application for rehearing in the American Manufacturing Corporation, Inc., case pending our determination of the present case. *Page 783 
After a careful consideration of the application for rehearing in the American Manufacturing Corporation, Inc., case and the review in the present case, we have arrived at the conclusion that our findings in the American Manufacturing Corporation, Inc., case are correct. Consequently, we are reversing the judgments of the lower court and the Court of Appeal for the Parish of Orleans in the present case, for the reason that the holdings are contrary to our determination in the American Manufacturing Corporation, Inc., case.
In our opinion handed down in the American Manufacturing Corporation, Inc., case, we discussed at length the various authorities cited by the contestants and arrived at the conclusion that the damage suffered by the plaintiff was not covered by the terms of the insurance policy. The terms of the policies involved in this case are identical. No purpose could be gained by restating our views for the reason we are firmly convinced that they are correct.
Since we handed down our original opinion in the American Manufacturing Corporation, Inc., case on June 29, 1942, the Supreme Judicial Court of Massachusetts handed down on December 1, 1942, an opinion in the cases of Woogmaster v. Liverpool 
London Globe Ins. Co., Ltd., Woogmaster v. Girard Fire Marine Ins. Co., and Woogmaster v. Phœniz Ins. Co., 312 Mass. 479,45 N.E.2d 394, 396, consistent with our views. The pertinent part of that decision reads as follows:
"In determining the risk covered by these policies it is necessary to read the insuring *Page 784 
and the `Hazards not covered' clauses together. The words `except as herein provided', which appear in the insuring clause, must be presumed to have been used for a specific purpose. They cannot be struck from the policies. Neither can they be ignored. Their apparent purpose was to limit the otherwise broad provisions of the insuring clause by excluding from its scope loss and damage arising from certain hazards or risks. Policies of fire insurance have frequently excepted losses due to earthquakes or to orders of civil authorities even though these causes resulted in setting fire to and destroying the property described in the policies. Baker Hamilton v. Williamsburgh City Fire Ins. Co., C.C., 157 F. 280; Richmond Coal Co. v. Commercial Union Assurance Co., Ltd., C.C., 159 F. 985; Williamsburgh City Fire Ins. Co. v. Willard, 9 Cir., 164 F. 404, 21 L.R.A., N.S., 103; McEvoy v. Security Fire Ins. Co., 110 Md. 275, 73 A. 157, 22 L.R.A., N.S., 964, 132 Am.St.Rep. 428; Port Washington National Bank Trust Co. v. Hartford Fire Ins. Co., 253 App. Div. 760, 300 N.Y.S. 874; Hocking v. British America Assur. Co., 62 Wn. 73, 113 P. 259, 36 L.R.A., N.S., 1155, Ann.Cas. 1912C, 965. See G.L.(Ter.Ed.) c. 175, § 99, Ninth.
"Unless the `Hazards not covered' clause limited the scope of the Insuring clause in the policies in question there would seem to be no reason for the insertion of such a clause. No one holding one of these policies could rightly claim that he was thereby insured against loss by fire, tornado, cyclone, windstorm, earthquake, riot and the various other causes mentioned in the `Hazards not covered' clause. There would *Page 785 
be no reason for expressly exempting the insurers from losses directly or indirectly resulting from the hazards named if it was the intent to exclude them merely as causes independent of and separate from losses incurred by sprinkler leakage. If that were the only purpose of the exemption clause it would be unnecessary and meaningless. If the plaintiff's loss was not due to sprinkler leakage then he was not insured at all, but if he was damaged by such leakage then he was protected unless the leakage was caused either directly or indirectly by some one of the hazards mentioned in the clause exempting the companies from liability. In other words, he was not insured against all sprinkler leakage, however it may have been caused, but was insured against all sprinkler leakage excepting only that which resulted directly or indirectly from any of the hazards named in the exempting clause. Here the insurers exempted themselves from liability for sprinkler leakage due either directly or indirectly to a windstorm. That was not a risk covered by the policies. While the decisions dealing with the interpretation of policies like the ones in question are not uniform, we think the better rule is set forth in those decisions holding that the contracts of insurance couched in language similar to or identical with those issued by the defendants do not cover loss or *Page 786 
damage by sprinkler leakage caused by a hazard concerning which the insurer has exempted itself from any loss or damage directly or indirectly flowing therefrom. The plaintiff was not entitled to recover upon the agreed facts."
The plaintiff contends that the atmospheric disturbance which damaged the building and ruptured the sprinkler system was a hailstorm instead of a windstorm.
From an examination of the evidence, particularly the testimony of Mr. R.A. Dyke, meteorologist of the U.S. Dept. of Agriculture, Weather Bureau, we find that at the time the building was damaged and the sprinkler system ruptured there was a heavy windstorm accompanied by a severe hail storm. The wind reached as high a velocity as thirty-two miles per hour. This, in our opinion, conclusively shows that there was a windstorm at the time the building was damaged and the sprinkler system ruptured. Bogalusa Gin Warehouse v. Western Assur. Co., 199 La. 715, 6 So.2d 740.
For the reasons assigned, the judgment of the lower court and the judgments of the Court of Appeal for the Parish of Orleans are reversed and set aside. It is now ordered that the plaintiff's suit be dismissed at its cost.
ODOM, J., absent. *Page 787